UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| CHRIS KYNER, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 2:17-cv-00373-JMS-MJD |
|  | ) |  |
| BENJAMIN R. LOVERIDGE, *et al.* | ) |  |
|  | ) |  |
| Defendants. | ) |  |

**Order Granting in Part Defendants' Motions for Partial Judgment on the Pleadings**

Plaintiff Chris Kyner's amended complaint asserts that he injured his face in a fall when he was housed at the New Castle Correctional Facility and that he received constitutionally inadequate care for his injuries from the defendants.

The defendants move for partial judgment on the pleadings arguing that certain of Mr. Kyner's claims are barred by the statute of limitations.

**I.     Standard of Review**

After the pleadings are closed but early enough not to delay trial, a defendant may move for judgment on the pleadings for reason that a complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014). The complaint must state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A reviewing court draws all reasonable inferences and facts in favor of the

non-movant, but need not accept as true any legal assertions. *Vesely v. Armslist LLC*, 762 F.3d 661, 664-65 (7th Cir. 2014).

## II. Relevant Facts

Chris Kyner is currently incarcerated at the Wabash Valley Correctional Facility, but has sued certain medical providers based on care that he received while at New Castle Correctional Facility. Those defendants are Dr. Loveridge, Deanna Hauri, Jane Gregory, Nicole Davis, Megan Miller, and Meranda Vicente. Mr. Kyner filed his original Complaint on August 3, 2017. In his original Complaint, he identified as defendants Dr. Loveridge, Deanna Hauri, Jane Gregory, Nicole Davis, and Meranda Vicente. On December 6, 2017, Mr. Kyner filed an amended complaint which added Megan Miller as a defendant.

The following facts are as pleaded in Mr. Kyner's amended complaint, dkt. 35, and are assumed to be true for the purposes of this Order only.

On June 9, 2015, Mr. Kyner slipped and fell on the right side of his face. As a result, several hard-plastic objects were imbedded in his face, although he initially did not realize this. It was not until June 12, 2015, that Mr. Kyner noticed a small object in the right side of his jaw and some numbness on the right side of his face. On that day, he hand-delivered a health services request to the nursing staff during rounds in his unit. He requested to be x-rayed as soon as possible and to have any objects removed.

By June 14, 2015, the numbness in Mr. Kyner's right face had expanded and he experienced swelling. He handed a request seeking emergency medical care to Nurse Hauri on the evening of June 14, 2015, and verbally told her of his complaints. Nurse Hauri allegedly acknowledged that Mr. Kyner had swelling and a possible infection in his face, but Nurse Hauri ignored the symptoms, and told him to submit another request. After speaking with Nurse Hauri,

Mr. Kyner alleges that he developed escalating pain in his right cheek and he had difficulty sleeping or lying down on the right side.

On June 15, 2015, Mr. Kyner attended a sick call appointment with a Nurse Vicente. He advised her of his symptoms, including the pain, and the presence of foreign objects in his face. He also told her he suspected an infection and requested pain medication and antibiotics. Nurse Vicente allegedly refused to physically examine him, but acknowledged the possible infection, swelling, and mobile objects in his right cheek. She denied his requests for medication and advised him he would be scheduled for "this Thursday" - June 18, 2015 - with the onsite practitioner.

Although he claims it was not accurately documented in the record, Mr. Kyner claims his pain worsened with swelling and itching. He apparently did not see anyone on June 18, 2015, so he submitted another request for medical treatment. On June 23, 2015, Nurse Vicente responded to the request in writing, advising him that his appointment had been rescheduled to July 2, 2015. On June 22, 2015, Nurse Hauri repeated this statement to Mr. Kyner as well. He continued to inform the nursing staff that he was experiencing pain, difficulty sleeping, and the inability to lie on the right side of his face. By June 27, 2015, Mr. Kyner's face had become very swollen, painful, numb, and itchy. He reported these issues to various nurses.

Dr. Loveridge saw Mr. Kyner on July 2, 2015. Mr. Kyner related to the doctor his history of injury, severe, ongoing pain, worsening numbness, and swelling since the night of June 14, 2015. During the physical evaluation, Dr. Loveridge felt an object in Mr. Kyner's right upper gums and another three centimeters under the right eye. These were mobile and tender to move. Dr. Loveridge noted that Mr. Kyner had atypical face pain, mild erythema, and edema. Mr. Kyner claims Dr. Loveridge also acknowledged a possible infection but did not note it in his records. Dr. Loveridge told Mr. Kyner he would be set for an x-ray on Monday, July 6, 2015, but he would

likely need to reopen the laceration and remove the object from under Mr. Kyner's eye. Dr. Loveridge planned to refer Mr. Kyner to the dentist to evaluate his gums and prescribed antibiotics, but allegedly denied Mr. Kyner pain medication.

On July 6, 2015, Nurse Vicente advised Mr. Kyner that he was scheduled for an x-ray that day. But when the officers came to take Mr. Kyner to the x-ray, he refused to suit up because his jump suit was filthy; instead, he requested a clean jumpsuit. The officers did not provide him a clean jumpsuit and told Nurse Vicente that Mr. Kyner refused the x-ray. Mr. Kyner attempted to contact Nurse Vicente through correctional officers so he could receive the x-ray, but Nurse Vicente would not speak with him. Nurse Vicente, he argues, should have seen Mr. Kyner and confirmed that he truly was refusing. The next day, Nurse Vicente told Mr. Kyner that she knew he wanted to speak with her, but she had wanted to go home.

Mr. Kyner was taken for the x-ray on July 8, 2015. Dr. Loveridge also re-examined Mr. Kyner, felt the objects embedded in his face, and noted that the x-rays did not reveal their presence. He planned to schedule Mr. Kyner with a specialist. A different doctor, Dr. Davis, also took a panoramic x-ray that did not reveal the presence of any foreign objects. Mr. Kyner advised Dr. Loveridge of the pain, numbness, swelling, and itching in his face, and difficulty chewing. He requested pain medication and stronger antibiotics, but Dr. Loveridge denied him pain medication because "another two weeks or so's nothing."

Dr. Loveridge submitted the outpatient request on July 9, 2015, and it was approved on July 14, 2015. Mr. Kyner complains that Nurse Vicente should have ensured that Dr. Loveridge saw him more promptly and that she should not have deferred to Dr. Loveridge's inadequate course of treatment. He raises the same complaint against Nurse Hauri.

4

On July 29, 2015, Mr. Kyner attended his consult with Dr. Alderman, who removed several foreign objects from his face. Dr. Alderman prescribed 600 mg of ibuprofen to Mr. Kyner, beginning July 29, 2015, and ending on August 5, 2015. In addition, Dr. Alderman prescribed the antibiotic amoxicillin 500 mg over the same period of time.

Mr. Kyner contends that beginning July 30, 2015, he was denied any pain medication, much less ibuprofen, and the nurses occasionally failed to give him the antibiotics. On August 5 or August 6, 2015, Nurse Vicente gave Mr. Kyner some Tylenol, but not the full amount. She ignored his requests for the missing medication. Mr. Kyner reports that Dr. Loveridge knew as of July 29, 2015, that he required ibuprofen or something similar, but he did not provide it.

Mr. Kyner alleges that he filed grievances relating to the medical personnel's failure to provide him with proper medical care. Specifically, he asserts that he submitted two informal complaints concerning the nursing care to Megan Miller on June 22, 2015, but she failed to respond. He pursued the grievance process, receiving responses from others on July 21, 2015, and July 22, 2015.

### III.    Discussion

The defendants argue that (1) all claims against Megan Miller be dismissed on the basis of the statute of limitations; and (2) all claims against the other defendants that accrued before August 3, 2015, be dismissed on the basis of the statute of limitations.

### A.    Statute of Limitations

The statute of limitations for claims under 42 U.S.C. § 1983 arising in Indiana is two years. *Devbrow v. Kalu*, 705 F.3d 765, 767 (7th Cir. 2013); *Jackson v. Kotter*, 541 F.3d 688, 699 (7th Cir. 2008); *Behavioral Institute of Indiana, LLC, v. Hobart City of Common Council*, 406 F.3d 923, 929 (7th Cir. 2005). To determine whether a claim has accrued for purposes of the statute of

5

limitations, the Court first identifies the injury and then determines the date on which the plaintiff could have sued for that injury. That date should coincide with the date the plaintiff knew or should have known that his rights were violated. *Behavior*, 406 F.3d at 929 (quotations omitted).

Generally, the statute of limitations runs from the date of the injury, *Pitts v. City of Kankakee, Ill*, 267 F.3d 592, 595 (7th Cir. 2001), or in the case of a "§ 1983 claim to redress a medical injury arising from deliberate indifference to a prisoner's serious medical needs[, ] when the plaintiff knows of his physical injury and its cause," *Devbrow*, 705 F.3d at 768. Here, this claim arises from a continuing Eighth Amendment violation from defendants' deliberate indifference to Mr. Kyner's medical needs by refusing to treat his condition. As the Seventh Circuit has held, "[e]very day that they prolonged his agony by not treating his painful condition marked a fresh infliction of punishment that caused the statute of limitations to start running anew." *Heard v. Sheahan*, 253 F.3d 316, 318-20 (7th Cir. 2001); *see also Davis v. Bartholomew Cty. Jail*, No. 1:07-cv-639-RLY-JMS, 2008 U.S. Dist. LEXIS 18500, at *5-6 (S.D. Ind. Mar. 7, 2008). Such a violation accrues for "as long as a defendant knows about a prisoner's serious medical condition, has the power to provide treatment, and yet withholds treatment." *Wilson v. Groze*, 800 F.Supp.2d 949, 955 (N.D. Ill. 2011) (citing *Heard*, 253 F.3d at 318-20); *Jervis v. Mitcheff*, 258 Fed. Appx. 3 (7th Cir. 2007) ("Deliberate indifference to a serious medical need is a continuing violation that accrues when the defendant has notice of the untreated condition and ends only when treatment is provided or the inmate is released."); *Smetzer v. Newton*, No. 1:10-CV-93, 2012 WL 6681702 at *10 (N.D. Ind. Dec. 21, 2012).

**B.     Claim against Megan Miller**

Mr. Kyner asserts that Megan Miller failed to respond to his two informal complaints on June 22, 2015, concerning the lack of nursing care he received. He eventually received responses

6

through the grievance process on July 21, 2015, and July 22, 2015. However, Megan Miller was added as a defendant in Mr. Kyner's amended complaint on December 6, 2017, well over two years after the Mr. Kyner's allegations against Ms. Miller. Accordingly, all claims against Ms. Miller are barred by the statute of limitations. She is dismissed from this action.

### C. Claims against other Defendants

Mr. Kyner filed his original complaint, and named the non-Miller defendants, on August 3, 2017. Mr. Kyner has various claims that accrue and ended at different points. Those claims that accrued and ended before August 3, 2015 are barred by the statute of limitations.

Mr. Kyner's injuries began on June 9, 2015, but he did not seek medical help until June 12, 2015. Despite repeated requests for medical assistance and pain medication, Mr. Kyner was not examined until he saw Dr. Loveridge on July 2, 2015. Thus, his claims that the nurses delayed his healthcare requests, failed to timely schedule him for medical treatment, and delayed his access to Dr. Loveridge accrued beginning June 12, 2015, and ended when he saw Dr. Loveridge on July 2, 2015. These claims are thus barred by the statute of limitations.

During his examination by Dr. Loveridge, Mr. Kyner was told he would get an x-ray on July 6, 2015. He was also supposed to get referred to a dentist for evaluation of his gums. Mr. Kyner was instead taken for an x-ray on July 8, 2015. Thus, his claims regarding the delay in getting x-rays accrued on July 6, 2015 and ended on July 8, 2015. This claim is also barred by the statute of limitations. However, it is unclear whether Mr. Kyner was ever seen by a dentist for evaluation of his gums. Thus, this claim cannot be dismissed at this time.

Mr. Kyner raised various claims regarding inadequate care from Dr. Loveridge and the nurses, but was seen on July 29, 2015, by Dr. Alderman, who removed several foreign objects from his face and prescribed him 600 mg of ibuprofen. Thus, statute of limitations for any claims

7

against Dr. Loveridge and the nurses from before July 29, 2015, regarding delay and failure to provide care began to run on July 29, 2015, when he received appropriate care from Dr. Alderman. Thus, these claims are also barred by the statute of limitations.

Finally, Mr. Kyner claims that beginning July 30, 2015, he was denied any pain medication, ibuprofen, or antibiotics. These were not resolved until, at the earliest, August 5, 2015. Thus, these claims are not barred by the statute of limitations and remain.

## IV. Conclusion

For the following reasons, defendants Benjamin Loveridge, M.D., Deanna Hauri, LPN, Jane Gregory, LPN, and Nicole David, LPN's motion for partial judgment on the pleadings, dkt. [53], and defendants Megan Miller and Meranda Vicente's motion to join co-defendants' motion for partial judgment on the pleadings, dkt. [60], are **granted in part**.

The claims remaining in this case are: (1) the claim that Dr. Loveridge failed to refer Mr. Kyner to a dentist for evaluation of his gums; and (2) the claim against Dr. Loveridge and Nurses Hauri, Gregory, David, and Vincente for failing to provide pain medication and antibiotics ordered by Dr. Alderman beginning July 30, 2015.

All other claims are dismissed. All claims against Megan Miller are dismissed. The clerk is **directed to terminate** Ms. Miller on the docket.

No partial judgment will issue at this time.

**IT IS SO ORDERED.**

Date: 5/17/2018

*Jane Magnus-Stinson*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

CHRIS KYNER
160111
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com