UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| CHRIS KYNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-00373-JMS-MJD |
| | ) | |
| BENJAMIN R. LOVERIDGE, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**Order Granting Motion to Amend and Supplement Original Response Brief and Granting in Part Defendants' Motions for Partial Judgment on the Pleadings**

**I.    Motion to Amend and Supplement Original Response Brief**

Plaintiff Chris Kyner's motion to amend and supplement original response brief, dkt. [83], is **granted** to the extent the Court shall construe the response brief to be a surreply. The Court appreciates Mr. Kyner's efforts to shorten his responsive brief. However, the Court does not appreciate Mr. Kyner's attempt to circumvent the page limits by shoehorning 25 additional pages by "adopt[ing] by reference the content [of] pages 3 thru 28 of Doc. 76," particularly where Mr. Kyner is merely repeating the "well-pleaded facts from Plaintiff's amended complaint," and these facts are already present in his amended complaint and did not need to be needlessly repeated in his brief. Nonetheless, the Court will review all briefing and relevant pleadings in its ruling.

**II.    Motions for Partial Judgment on the Pleadings**

Plaintiff Chris Kyner's amended complaint asserts that he injured his face in a fall when he was housed at the New Castle Correctional Facility and that he received constitutionally inadequate care for his injuries from the defendants.

The defendants move for partial judgment on the pleadings arguing that certain of Mr. Kyner's claims are barred by the statute of limitations.

### A. Standard of Review

After the pleadings are closed but early enough not to delay trial, a defendant may move for judgment on the pleadings for reason that a complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014). The complaint must state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A reviewing court draws all reasonable inferences and facts in favor of the non-movant, but need not accept as true any legal assertions. *Vesely v. Armslist LLC*, 762 F.3d 661, 664-65 (7th Cir. 2014).

### B. Relevant Facts

Chris Kyner is currently incarcerated at the Wabash Valley Correctional Facility, but has sued certain medical providers based on care that he received while at the New Castle Correctional Facility. Those defendants are Dr. Loveridge, Deanna Hauri, Jane Gregory, Nicole Davis, Megan Miller, and Meranda Vicente. Mr. Kyner filed his original Complaint on August 3, 2017. In his original Complaint, he identified as defendants Dr. Loveridge, Deanna Hauri, Jane Gregory, Nicole Davis, and Meranda Vicente. On December 6, 2017, Mr. Kyner filed an amended complaint which added Megan Miller as a defendant.

The following facts are as pleaded in Mr. Kyner's amended complaint, dkt. 35, and are assumed to be true for the purposes of this Order only.

On June 9, 2015, Mr. Kyner slipped and fell on the right side of his face. As a result, several hard, jagged, and "unblunted" plastic objects were imbedded in his face, although he initially did not realize this. It was not until June 12, 2015, that Mr. Kyner noticed a small object in the right side of his jaw and some numbness on the right side of his face. On that day, he hand-delivered a health services request (HCRF #296247) to the nursing staff during rounds in his unit. He requested to be x-rayed as soon as possible and to have any objects removed.

By June 14, 2015, the numbness in Mr. Kyner's right face had expanded and he experienced swelling. He handed a request (HCRF #293789) seeking emergency medical care to Nurse Hauri on the evening of June 14, 2015, and verbally told her of his complaints. Nurse Hauri verbally acknowledged that Mr. Kyner had swelling and a possible infection in his face, but Nurse Hauri ignored the symptoms, and told him to submit another request if his condition worsened. After speaking with Nurse Hauri, Mr. Kyner alleges that he developed escalating pain in his right cheek and he had difficulty sleeping or lying down on the right side.

On June 15, 2015, Mr. Kyner attended a sick call appointment with a Nurse Vicente. He advised her of his symptoms, including the pain, and the presence of foreign objects in his face. He also told her he suspected an infection and requested pain medication and antibiotics. He again requested to receive an x-ray and have the objects removed from his face immediately. Nurse Vicente refused to physically examine him, but did feel around the upper and exterior portions of his right cheek while acknowledging the possible infection, swelling, and mobile objects in his right cheek. She denied his requests for pain medication and antibiotics and advised him he would be scheduled for "this Thursday" - June 18, 2015 - with the onsite practitioner.

Although he claims it was not accurately documented in the record, Mr. Kyner alleges his pain worsened with swelling and itching. He apparently did not see anyone on June 18, 2015, so

he submitted another request (HCRF #293799) for medical treatment. On June 23, 2015, Nurse Vicente responded to the request in writing, advising him that his appointment had been rescheduled to July 2, 2015. On June 22, 2015, Nurse Hauri had already verbally made this statement to Mr. Kyner as well. He continued to inform the nursing staff that he was experiencing pain, difficulty sleeping, and the inability to lie on the right side of his face. By June 27, 2015, Mr. Kyner's face had become very swollen, painful, numb, and itchy. He reported these issues to various nurses, and submitted another request (HCRF 294822). By June 29, 2015, the pain in his right side check was interfering with his ability to chew.

Dr. Loveridge saw Mr. Kyner on July 2, 2015. Mr. Kyner related to the doctor his history of injury, severe, ongoing pain, worsening numbness, and swelling since the night of June 14, 2015. During the physical evaluation, Dr. Loveridge felt an object in Mr. Kyner's right upper gums and another three centimeters under the right eye. These were mobile and tender to move. Dr. Loveridge noted that Mr. Kyner had atypical face pain, mild erythema, and edema. Mr. Kyner claims Dr. Loveridge also acknowledged a possible infection but did not note it in his records. Dr. Loveridge told Mr. Kyner he would be set for a "non-emergency" x-ray on Monday, July 6, 2015, but he would likely need to reopen the laceration and remove the object from under Mr. Kyner's eye. Dr. Loveridge planned to refer Mr. Kyner to the dentist to evaluate his gums and prescribed antibiotics, but denied Mr. Kyner pain medication. Antibiotics were administered to Mr. Kyner from July 3, 2015, through July 13, 2016.

On July 6, 2015, Nurse Vicente advised Mr. Kyner that he was scheduled for an x-ray that day. But when the officers came to take Mr. Kyner to the x-ray, he refused to suit up because his jump suit was filthy; instead, he requested a clean jumpsuit. The officers did not provide him a clean jumpsuit and told Nurse Vicente that Mr. Kyner refused the x-ray. Mr. Kyner attempted to

contact Nurse Vicente through correctional officers so he could receive the x-ray, but Nurse Vicente would not speak with him.

On July 8, 2015, Nurse Vicente told Mr. Kyner that she knew he wanted to speak with her, but she had wanted to go home and the correctional officers had already told her he refused to get an x-ray. Later that day, Mr. Kyner was taken for the x-ray. Dr. Loveridge also re-examined Mr. Kyner, felt the objects embedded in his face, and noted that the x-rays did not reveal their presence. He planned to schedule Mr. Kyner with a specialist. Dr. Loveridge also suggested a dental evaluation. A different doctor, Dr. Davis, performed a dental evaluation that same day and took a panoramic x-ray that did not reveal the presence of any foreign objects. Dr. Davis felt that oral surgery would be needed. Mr. Kyner advised Dr. Loveridge of the pain, numbness, swelling, and itching in his face, and difficulty chewing. He requested pain medication and stronger antibiotics, but Dr. Loveridge denied him pain medication because "another two weeks or so's nothing."

Dr. Loveridge submitted the outpatient request on July 9, 2015, and it was approved on July 14, 2015. Mr. Kyner complains that Nurse Vicente should have ensured that Dr. Loveridge saw him more promptly and that she should not have deferred to Dr. Loveridge's inadequate course of treatment. He raises the same complaint about Nurse Hauri.

On July 29, 2015, Mr. Kyner attended his outside consult with Dr. Alderman, who removed several foreign objects from his face. Dr. Alderman prescribed 600 mg of ibuprofen to Mr. Kyner, beginning July 29, 2015, and ending on August 5, 2015. In addition, Dr. Alderman prescribed the antibiotic amoxicillin 500 mg over the same period of time.

Mr. Kyner contends that beginning July 30, 2015, he was denied any pain medication, much less ibuprofen, and the nurses occasionally failed to give him the antibiotics. On August 5 or August 6, 2015, Nurse Vicente gave Mr. Kyner some Tylenol, but not the full amount. She

ignored his requests for the missing medication. Mr. Kyner reports that Dr. Loveridge knew as of July 29, 2015, that he required ibuprofen or something similar, but he did not provide it.

Mr. Kyner alleges that he filed grievances relating to the medical personnel's failure to provide him with proper medical care. Specifically, he asserts that he submitted two informal complaints concerning the nursing care to Megan Miller on June 22, 2015, but she failed to respond. He pursued the grievance process, receiving responses from others on July 21, 2015, and July 22, 2015.

### C. Discussion

The defendants argue that (1) all claims against Megan Miller be dismissed on the basis of the statute of limitations; and (2) all claims against the other defendants that accrued before August 3, 2015, be dismissed on the basis of the statute of limitations. *See* dkt. 53; dkt. 54; dkt. 60. Mr. Kyner has filed a response. *See* dkt. 75; dkt. 76. The defendants filed a reply to Mr. Kyner's original response. *See* dkt. 82. Mr. Kyner contemporaneously filed an amended and supplemented response brief. *See* dkt. 84; dkt. 85. Because the defendants' reply contains essentially the same arguments included in their response to Mr. Kyner's motion for reconsideration, dkt. 80, the Court construes Mr. Kyner's amended and supplemented response brief to be a surreply. The Court will review all submitted briefing related to this motion.

#### 1. Statute of Limitations

The statute of limitations for claims under 42 U.S.C. § 1983 arising in Indiana is two years. *Devbrow v. Kalu*, 705 F.3d 765, 767 (7th Cir. 2013); *Jackson v. Kotter*, 541 F.3d 688, 699 (7th Cir. 2008); *Behavioral Institute of Indiana, LLC, v. Hobart City of Common Council*, 406 F.3d 923, 929 (7th Cir. 2005). To determine whether a claim has accrued for purposes of the statute of limitations, the Court first identifies the injury and then determines the date on which the plaintiff

could have sued for that injury. That date should coincide with the date the plaintiff knew or should have known that his rights were violated. *Behavior*, 406 F.3d at 929 (quotations omitted).

Generally, the statute of limitations runs from the date of the injury, *Pitts v. City of Kankakee, Ill*, 267 F.3d 592, 595 (7th Cir. 2001), or in the case of a "§ 1983 claim to redress a medical injury arising from deliberate indifference to a prisoner's serious medical needs[, ] when the plaintiff knows of his physical injury and its cause," *Devbrow*, 705 F.3d at 768. Here, this claim arises from a continuing Eighth Amendment violation from defendants' deliberate indifference to Mr. Kyner's medical needs by refusing to treat his condition. As the Seventh Circuit has held, "[e]very day that they prolonged his agony by not treating his painful condition marked a fresh infliction of punishment that caused the statute of limitations to start running anew." *Heard v. Sheahan*, 253 F.3d 316, 318-20 (7th Cir. 2001); *see also Davis v. Bartholomew Cty. Jail*, No. 1:07-cv-639-RLY-JMS, 2008 U.S. Dist. LEXIS 18500, at *5-6 (S.D. Ind. Mar. 7, 2008). Such a violation accrues for "as long as a defendant knows about a prisoner's serious medical condition, has the power to provide treatment, and yet withholds treatment." *Wilson v. Groze*, 800 F.Supp.2d 949, 955 (N.D. Ill. 2011) (citing *Heard*, 253 F.3d at 318-20); *Jervis v. Mitcheff*, 258 Fed. Appx. 3, 5-6 (7th Cir. 2007) ("Deliberate indifference to a serious medical need is a continuing violation that accrues when the defendant has notice of the untreated condition and ends only when treatment is provided or the inmate is released."); *Smetzer v. Newton*, No. 1:10-CV-93, 2012 WL 6681702 at *10 (N.D. Ind. Dec. 21, 2012).

2. <u>Claim against Megan Miller</u>

Mr. Kyner asserts that Megan Miller failed to respond to his two informal complaints on June 22, 2015, concerning the lack of nursing care he received. He eventually received responses through the grievance process on July 21, 2015, and July 22, 2015.

The defendants argue that Megan Miller was added as a defendant in Mr. Kyner's amended complaint on December 6, 2017, well over two years after the Mr. Kyner's allegations against Ms. Miller. Mr. Kyner argues that Ms. Miller is a proper defendant because he identified a "(Jane/John Doe), Health Services Administrator" in his August 1, 2017, Complaint. *See* dkt. 75 at 1; dkt. 76 at 45-46; dkt. 84 at 1; dkt. 85 at 16-17. In reply, the defendants argue that the use of "John Doe/Jane Doe" in the original complaint did not toll the statute of limitations, particularly so where Ms. Miller was later dismissed *sua sponte* without notice. Dkt. 82 at 2-3.

Rule 15(c)(1)(C) provides that Mr. Kyner's claims against Ms. Miller in his amended complaint will relate back to the date of the original complaint if "within the period provided by Rule 4(m) for service of the summons and complaint," Ms. Miller "(i) received such notice of the action that [she] will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against [her], but for a mistake concerning the proper party's identity." *Fed. R. Civ. P*. 15(c)(1)(C). However, as the Seventh Circuit explained, "it is pointless to include [an] anonymous defendant [ ] in federal court; this type of placeholder does not open the door to relation back under Fed. R. Civ. P. 15, nor can it otherwise help the plaintiff." *Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997) (internal citations omitted). Filing a "John Doe" complaint does not toll the statute of limitations until such time as a named defendant may be substituted. *Roddy v. Canine Officer*, 293 F. Supp. 2d 906, 913-14 (S.D. Ind. 2003) (citing *Wudtke*, 128 F.3d at 1060 (citing *Sassi v. Breier*, 584 F.2d 234, 235 (7th Cir. 1978))).

Here, Mr. Kyner's use of "John Doe/Jane Doe, Health Services Administrator" as a placeholder does not satisfy the requirements to relation back under Fed. R. Civ. P. 15. Particularly, as here, where the Court dismissed claims against any John Doe/Jane Doe, there is nothing to show that Ms. Miller received notice of the action or knew that the action should have

been brought against her, but for a mistake. *See* Delgado-*Brunet v. Clark*, 93 F.3d 339, 344 (7th Cir. 1996) ("In fact…this is not even a case where the warden's receipt of the first complaint might somehow have put other prison officials on constructive notice of the suit. The district court concluded that the first complaint was frivolous, and it dismissed the complaint.")). Accordingly, all claims against Ms. Miller are barred by the statute of limitations. She is **dismissed** from this action.

        3.      <u>Claims against other Defendants</u>

Mr. Kyner filed his original complaint, and named the non-Miller defendants, on August 3, 2017. Mr. Kyner has various claims that accrue and ended at different points. Those claims that accrued and ended before August 3, 2015, are barred by the statute of limitations.

Mr. Kyner argues that all of his claims were part of the same continuing violation and thus continued beyond August 5, 2015. *See* dkt. 75 at 2-3; dkt. 84 at 2-3. He asserts that his pain was ongoing and severe beginning in the late hours of June 14, 2015, through August 5, 2015, when he received Acetaminophen from Nurse Vicente. *See* dkt. 76 at 39. As Mr. Kyner appears to argue, none of his claims against all defendants were resolved until Nurse Vicente provided the Acetaminophen on August 5, 2015, and are thus not barred by the statute of limitations. *Id.* at 39-45; dkt. 85 at 17-25.

The defendants argue that by July 29, 2015, Mr. Kyner was seen by Dr. Alderman, who ordered him 600 mg ibuprofen and 500 mg of amoxicillin, so all complaints of inadequate care were resolved by then. Dkt. 82 at 3. The defendants argue that all that remained after July 29, 2015, was for the providers to follow through on Dr. Alderman's instructions, which was to provide the medication. The defendants assert this is the only claim that should remain. *Id.* The

defendants also argue that Mr. Kyner is confusing a continuing series of events that cause a cumulative injury with a discrete event that causes a continuing injury. *Id.* at 4.

As the Court previously set forth, a violation accrues "as long as a defendant knows about a prisoner's serious medical condition, has the power to provide treatment, and yet withholds treatment." *Wilson*, 800 F. Supp. 2d at 955 (citing *Heard*, 253 F.3d at 318-20); *Jervis*, 258 Fed. Appx. at 5-6 ("Deliberate indifference to a serious medical need is a continuing violation that accrues when the defendant has notice of the untreated condition and ends only when treatment is provided or the inmate is released."); *Smetzer*, 2012 WL 6681702 at *10.

Mr. Kyner's injuries began on June 9, 2015, but he did not seek medical help until June 12, 2015. Despite repeated requests for medical assistance and pain medication, Mr. Kyner was not examined until he saw Dr. Loveridge on July 2, 2015. Thus, his claims that the nurses delayed his healthcare requests, failed to timely schedule him for medical treatment, and delayed his access to Dr. Loveridge accrued beginning June 12, 2015, and ended when he saw Dr. Loveridge on July 2, 2015. These claims are thus barred by the statute of limitations.

During his examination by Dr. Loveridge, Mr. Kyner was told he would get an x-ray on July 6, 2015. He was also supposed to be referred to a dentist for evaluation of his gums. Mr. Kyner was instead taken for an x-ray and seen by a dentist on July 8, 2015. Thus, his claims regarding the delay in getting x-rays and seeing a dentist accrued on July 6, 2015, and ended on July 8, 2015. These claims are also barred by the statute of limitations.

Mr. Kyner raised various claims regarding inadequate care from Dr. Loveridge and the nurses, but was seen on July 29, 2015, by Dr. Alderman, who removed several foreign objects from his face and prescribed him 600 mg of ibuprofen. Thus, statute of limitations for any claims against Dr. Loveridge and the nurses from before July 29, 2015, regarding delay and failure to

provide care began to run on July 29, 2015, when he received appropriate care from Dr. Alderman. Thus, these claims are also barred by the statute of limitations.

Finally, Mr. Kyner claims that beginning July 30, 2015, he was denied any pain medication, ibuprofen, or antibiotics. These were not resolved until, at the earliest, August 5, 2015. Thus, these claims are not barred by the statute of limitations and remain.

### III. Conclusion

Plaintiff Chris Kyner's motion to amend and supplement original response brief, dkt. [83], is **granted** to the extent the Court shall construe the response brief to be a surreply.

Defendants Benjamin Loveridge, M.D., Deanna Hauri, LPN, Jane Gregory, LPN, and Nicole Davis, LPN's motion for partial judgment on the pleadings, dkt. [53], and defendants Megan Miller and Meranda Vicente's motion to join co-defendants' motion for partial judgment on the pleadings, dkt. [60], are **granted in part**.

The claim remaining in this case is: the claim against Dr. Loveridge and Nurses Hauri, Gregory, Davis, and Vincente for failing to provide pain medication and antibiotics ordered by Dr. Alderman beginning July 30, 2015.

All other claims are **dismissed**. All claims against Megan Miller are **dismissed**. The clerk is **directed to terminate** Ms. Miller on the docket.

No partial judgment will issue at this time.

**IT IS SO ORDERED.**

Date: 7/18/2018

_Jane Magnus-Stinson_
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

CHRIS KYNER
160111
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Britney Jade McMahan
KATZ KORIN CUNNINGHAM, P.C.
bmcmahan@kkclegal.com