UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| CHRIS KYNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-00373-JPH-MJD |
| | ) | |
| BENJAMIN R. LOVERIDGE, | ) | |
| DEANNA HAURI, | ) | |
| MIRANDA VINCENTE, | ) | |
| JANE GREGORY, | ) | |
| N. DAVIS, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION TO QUASH AND MOTION TO COMPEL**

This matter is before the Court on Defendants' *Motion to Quash Subpoena in Part* [Dkt. 126] and Plaintiff's *Motion to Compel* [Dkt. 144]. For the reasons set forth below, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**; Plaintiff's Motion is **DENIED AS MOOT**.

I. **Background**

Plaintiff Chris Kyner brings claims against Defendants Dr. Loveridge and Nurses Hauri, Gregory, David, and Vicente, alleging that they were deliberately indifferent to his serious medical needs. The remaining claims in this case assert that Defendants failed to provide pain medication and antibiotics ordered by Dr. Alderman beginning July 30, 2015. [Dkt. 91 at 11.] In the course of discovery, on or about October 21, 2018, Plaintiff served a third-party subpoena on Warden Keith Butts, requesting documentation pertaining to Defendants and their employer at the relevant time, Corizon LLC, in addition to documentation from the Indiana Department of

1

Correction ("IDOC"). [Dkt. 126-1.] Defendants Loveridge, Hauri, Gregory, David, and Vicente, as well as former Defendant Miller, seek an order to quash the subpoena in part. [Dkt. 126.] Defendants state that "[m]ost of the eighty-one (81) requests concern IDOC documentation, so Defendants do not have standing to object, but some specifically involve their personnel records and correspondence." [Dkt. 126 at 2.]

On December 26, 2018, Plaintiff filed a motion to compel, seeking an order from the Court to compel third-party Keith Butts to produce the subpoenaed documents. [Dkt. 144.]

## II. Legal Standard

Federal Rule of Civil Procedure 45 governs the issuance of subpoenas. The breadth of discoverable material via subpoena parallels the liberal scope permitted under Rule 26(b) so long as the material sought is relevant, and not privileged. *Graham v. Casey's Gen. Stores,* 206 F.R.D. 251, 253–54 (S.D. Ind. 2002). A court must grant a motion to quash or modify a subpoena that "requires disclosure of privileged or other protected matter . . . or subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A) (iii)-(iv). When determining whether to enforce a discovery request, the court must weigh the need for the information, the breadth of the request, the time period the discovery covers, the particularity of the documents, and the burden imposed. *Charles v. Quality Carriers, Inc.,* No. 1:08-cv-00428-RLY-JMS, 2010 WL 396356 at *1 (S.D. Ind. Jan. 28, 2010). The party seeking to quash a subpoena bears the burden of establishing its objections. *Jackson v. Brinker,* 147 F.R.D. 189, 194 (S.D. Ind. 1993) (citing *Holifield v. United States,* 909 F.2d 201, 2014 (7th Cir.1990)).

Generally, only the subject of a subpoena may move to quash; however, if a party has a "personal right or privilege" or "legitimate interests," that party may object to the subpoena. *Brady v. Cent. Indiana Reg'l Blood Ctr. Inc.*, No. 1:99-MC-19, 1999 WL 33912610, at *1 (N.D.

2

Ind. Oct. 6, 1999); *Nobel Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 306 (S.D. Ind. 2016). The decision of whether to quash a subpoena falls within the district court's discretion. *See Ott v. City of Milwaukee*, 682 F.3d 552, 556 (7th Cir. 2012).

### III. Discussion

Defendants Loveridge, Hauri, Vicente, Gregory, and Davis, and former Defendant Miller, object to several of Plaintiff's requests in which they argue they have a personal right, privilege, or legitimate interest. The Court will address their objections below.

*A. Policies (Request Nos. 15–18)*

Defendants first object to Request Nos. 15(a)–(e), 16, 17, and 18, which request various policies and guidelines in effect on June 12, 2015. The requests are as follows:

15. Each and every published policy, guideline, standard, program, statement, directive and/or procedure (other than Policy 04-01-104, AHCSD 2.04, Policy 01-02-101 and HCSD 1.30) of IDOC's – and each and every published policy, guideline, standard, rule, program, statement, directive and/or procedure of Corizon, LLC's equivalent-in-purpose (and/or related) thereto – as was in effect on 6/12/2015:
    a. Governing the establishment, maintenance, and disposition of prisoner medical records;
    b. Governing the establishment, maintenance, and disposition of health services personnel disciplinary records;
    c. Government the development and training of health services personnel;
    d. Governing the standards of conduct for health services personnel;
    e. Governing the establishment, maintenance, and disposition of health services personnel records; and
    f. Governing the dispensing of prescribed medications by health service staff.

16. IDOC's "The Development and Delivery of Health Care Services", 01-02-101 – and each and every published, equivalent-in-purpose (and/or related) thereto guideline, rule, standard, program[,] statement, directive and/or procedure of Corizon, LLC's – as was in effect on 6/12/2015.

17. IDOC Policy 04-01-104 – each and every published, equivalent-in-purpose (and/or related) thereto guideline, rule, standard, program[,] statement, directive and/or procedure of Corizon, LLC's – as was in effect on 6/12/2015.

> 18. IDOC's HCSD 1.30, "Consent and Refusal" – and each and every published, equivalent-in-purpose (and/or related) thereto guideline, rule, standard, program[,] statement, directive and/or procedure of Corizon, LLC's – as was in effect on 6/12/2015.

[Dkt. 126-1 at 4–5.]

Defendants argue that these requests, excluding Request No. 15(f), are not proportional to the needs of the case and fail to seek relevant information. [Dkt. 126 at 4.] They assert that Corizon is not a defendant, there is no claim that guidelines or policies were violated or are unconstitutional, the requests are not targeted to the appropriate time period, and they are not narrowly directed to the dispensing of medication. [*Id.*] Plaintiff, on the other hand, argues that the scope of his remaining claim includes deliberate indifference to his serious medical needs beginning June 12, 2015, and Defendants' failure to comply with relevant guidelines is relevant to his claims. [Dkt. 137 at 12–15.]

As a threshold matter, Defendants lack standing to object to these requests. Beyond concluding that they have a personal interest as employees of Corizon, Defendants fail to articulate why they have standing to object to these requests. As Corizon employees, Defendants lack any legitimate or personal interest in their employer's policies that would grant them standing. Nevertheless, the Court will discuss the merits of Defendants' argument.

Defendants assert that "requests for policies governing personnel records is also highly prejudicial" because "[t]he medical staff's personnel records are replete with private information that should not be released without some indicia of relevance to Plaintiff's claim that . . . Defendants failed to provide him medications." [Dkt. 126 at 4.] This argument fails, however, as this request only relates to the policies, not the records themselves. Because Plaintiff's requests here are not directed at the release of the medical staff's personnel records, this concern

is unwarranted. Accordingly, Defendants' motion to quash as to Request Nos. 15(a)–(e), 16, 17, and 18 is **DENIED**.

B. *Healthcare Training and Examination Records (Request Nos. 30, 32, 33, 35, 36, 38, 39, 41, 42, and 44)*

Defendants next object to the requests that are directed at healthcare training and examination records for Defendants, up to and including October 19, 2015. The requests are as follows:

30. Healthcare training record (up to and including 10/19/15) of nurse Jane Gregory ("Jane Gregory")(with corresponding areas, and start and completion dates of training).

32. Healthcare examination (nursing education examinations, mental capability examinations, and professionally competent examinations) record – up to and including 10/19/15 – of Jane Gregory.

33. Healthcare training record (up to and including 10/19/2015) of nurse Deanna R. Hauri ("Deanna Hauri") (with corresponding areas, and start and completion dates, of training).

35. Healthcare examination (i.e. nursing education examinations, mental capability examinations, and professionally competent examinations) record – up to and including 10/19/2015 – of Deanna Hauri;

36.[1] Healthcare training record (up to and including 10/19/2015) of nurse Nicole Davis ("Nicole Davis")(with corresponding areas, and start and completion dates, of training).

38. Healthcare examination (i.e. nursing education examinations, mental capability examinations, and professionally competent examinations) record – up to and including 10/19/2015 – of Nicole Davis.

39. Healthcare training record (up to and including 10/19/2015) of nurse Miranda L. Vincente ("Miranda Vincente")(w/ corresponding areas, and start and finish dates, of training).

---

[1] Defendants reference this as Request No. 37, but Request No. 37 describes healthcare education, not training. Based on Defendants' arguments, the Court will treat this as an objection to Request No. 36.

41. Healthcare examination (i.e. nursing education examinations, mental capability examinations, and professionally competent examinations) record – up to and including 10/19/2015 – of Miranda Vincente.

42. Healthcare training record (up to and including 10/19/2015) of Dr. Benjamin R. Loveridge ("Benjamin Loveridge") (w/ corresponding areas, and start and finish dates, of training).

44. Healthcare examination (i.e. nursing education examinations, mental capability examinations, professionally competent examinations, medicine education examinations, etc.) record – up to and including 10/19/2015 – of Benjamin Loveridge.

[Dkt. 126-1 at 7–8.]

Defendants first assert they have standing, as they have a personal interest in their training and healthcare examination records. [Dkt. 126 at 5–10.] Next, they argue that these requests are not proportional to the case and fail to seek relevant information because the requests are not narrowly tailored to the relevant period of time or to Defendants' training related to dispensing medications. [*Id.*] Additionally, Defendants allege that a request for mental capability and competency examinations are highly invasive and protected from disclosure by the Health Insurance Portability and Accountability Act of 1966 (HIPAA) and privacy rights under Indiana state law. [*Id.*] In response, Plaintiff argues that the requests are reasonably calculated to lead to admissible evidence of Defendants' failure to follow their accepted health services training, knowledge, or experience. [Dkt. 137 at 15–18.]

Plaintiff's requests for Defendants' training and healthcare examination records are relevant to his remaining claims of medical indifference, which requires Plaintiff to show Defendants' subjective state of mind. See *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). While Defendants' privacy concerns are valid regarding Defendants' mental capability and competency examinations, the records are potentially relevant to Plaintiff's medical indifference claims. Accordingly, the Court **DENIES** Defendants' motion regarding these requests; should

Mr. Butts possess and produce these records that Defendants believe are subject to HIPAA protection, Defendants may seek an *in camera* review of those documents prior to their production.

   C. *Healthcare Training and Examination Records for Megan Miller (Request Nos. 45–47)*

Next, Defendants object to Request Nos. 45–47, which are directed to the healthcare training, education, and examination records for former Defendant Megan Miller, up to and including October 19, 2015. The requests are as follows:

   45. Healthcare training record (up to and including 10/19/2015) of Health Services Administrator Megan Miller ("Megan Miller").

   46. Healthcare education record (up to and including 10/19/2015) of Megan Miller (with corresponding areas, and start and completion dates, of education);

   47. Healthcare examination (i.e., nursing education examinations, mental capability examinations, professionally competent examinations, medicine education examinations, etc.) record up to and including 10/19/2015 of Megan Miller.

[Dkt. 126-1 at 8–9.]

Miller was dismissed as a defendant from this case on July 18, 2018, and thus is no longer a party to this case. [Dkt. 91.] Defendants argue that these requests are not proportional to the case and fail to seek relevant information, at least because Miller is not a party to this case, and records about her are irrelevant to any remaining claim. [Dkt. 126 at 10–11.] In response, Plaintiff argues that Miller will be a witness, and thus documents relating to her are relevant for impeachment purposes. [Dkt. 137 at 18–19.]

Defendants lack standing to object to these requests, as they have no personal or legitimate interests, even though they "object on behalf of Miller." [Dkt. 126 at 10–11.] *See Brady*, 1999 WL 33912610, at *1; *Noble Roman's*, 314 F.R.D. at 306. However, Miller is listed among those that have moved for the Court to quash the subpoena [Dkt. 126 at 1], and she has

standing to object to the production of her own records. As Miller is no longer a defendant in this case, the Court agrees that her records are no longer relevant. Thus, Defendants' motion to quash as to Request Nos. 45–47 is **GRANTED**.

D. *Emails Relating to Plaintiff (Request Nos. 49–50)*

Defendants next object to Request Nos. 49 and 50, which are directed to any and all emails and electronic communications between IDOC, New Castle Correctional Facility ("NCCF"), and any healthcare personnel between June 9, 2015, and September 11, 2018, relating to Plaintiff. The requests are as follows:

> 49. Each and every email (and therewith sent, received, forwarded or disseminated files, records or documents) – in which Plaintiff's the subject or Plaintiff's name, DOC number or case number's mentioned or referenced – sent, received, forwarded or disseminated at any time during the duration of 6/9/2015 through 9/11/2018, via government, state, IDOC, GEO, or NCCF electronic device, by Nicole Davis, Miranda Vincente, Benjamin Loveridge, Megan Miller, Deanna Hauri, Dr. Alderman, MRC B. Joyner, MRC Donalda Griffin, Christopher Hufford, RN Monica Gibpson, GEO's Sgt. D. Sult, Ofc. Smith or Jennifer Smith, IDOCs' Esther Hinton, L.A. VanNatta or R. Majors or any other healthcare services personnel, IDOC personnel, or NCCF personnel and stored on a government, state, GEO, NCCF, or IDOC server.
>
> 50. Each and every electronic communication and transaction (other than those covered in request numbers 48 and 49, above) – in which Plaintiff's the subject or Plaintiff's name, DOC number or case number's mentioned or referenced – sent, received, forwarded or disseminated at any time during the duration of 6/9/2015 through 9/11/2018, via government, state, IDOC, GEO, or NCCF electronic device, by Nicole Davis, Miranda Vincente, Benjamin Loveridge, Megan Miller, Deanna Hauri, Dr. Alderman, MRC B. Joyner, Christopher Hufford, GEO's Gibson, IDOCs' Esther Hinton, L.A. VanNetta or R. Majors or any other healthcare services personnel, IDOC personnel or NCCF personnel.

[Dkt. 126-1 at 9–10.]

Defendants argue that these requests are not proportional to the needs of the case and are overbroad because the search for relevant documents would include an unlimited number of custodians and seeks emails from a three-year period not narrowly tailored to the claims of this

8

case. [Dkt. 126 at 11–13.] Moreover, they assert that Plaintiff is improperly invading the attorney-client and work product privileges. [*Id.*] In response, Plaintiff argues that Defendants have misconstrued his requests and that his requests are tailored to seek relevant information about his case. [Dkt. 137 at 21.] Plaintiff states in his Reply that his request does not include emails referring to this case, but his case with IDOC. [*Id.*] However, in a "good-faith effort to resolve the discovery dispute," Plaintiff has modified this request to a targeted time period of between June 9, 2015 and October 18, 2017. [*Id.*]

Defendants' blanket privilege objection is not sufficient to quash the subpoena with regards to this request. *aaiPharma, Inc. v. Kremers Urban Dev. Co.*, 361 F. Supp. 2d. 770, 777 (N.D. Ill. 2005). While there may exist documents responsive to the subpoena that are privileged, the subpoena also seeks categories of relevant documents that are unlikely to be privileged (such as communications between Defendants). Defendants must assert privilege objections specific to each responsive document and describe the nature of the withheld documents in a privilege log. *See* Fed. R. Civ. P. 45(e)(2); *see also National Labor Relations Bd. V. Modern Drop Forge Co.*, 108 F.3d 1379 (7th Cir. 1997) (reversing for abuse of discretion a district court's decision to quash a subpoena on a blanket privilege objection). The Court **DENIES** Defendants' request to quash the subpoena regarding these requests.

  E. *Complaint and Grievances (Request Nos. 57, 58, and 62)*

Defendants next object to Request Nos. 57, 58, and 62, directed to any and all complaints, grievances, or disciplinary actions filed against Defendants and several non-parties. The requests are as follows:

> 57. Each and every claim, complaint, grievance, or other document (with all corresponding: memoranda, investigative files, or other documents created responsively; lodging or filing dates; resultant disciplinary actions, sanctions, or penalties, and subjugation dates of resultant disciplinary actions, sanctions,

9

or penalties) concerning job-related or on-the-job violations (ethics, departmental, policy, rule or otherwise), misconduct, inadequate healthcare, healthcare denial, or denial of access to healthcare by Benjamin Loveridge, Deanna Hauri, Jane Gregory, Miranda Vincente, Nicole Davis, Megan Miller, MRC B. Joyner, or MRC Donalda Griffin, lodged or filed against said person(s) at any time during the duration of his/her holding of the profession status of, or at any time during his/her employment as, a healthcare services agent and received by NCCF or NCCF personnel – whether or not said person(s) was resultantly subjected to penalization (ie. demotion, suspension, termination, reassignment, reprimand, suspension, or revocation of healthcare profession license, permit, registration, or certificate of registration, or otherwise).

58. Each and every verbal complaint, claim, or grievance (with all corresponding: memoranda, investigative files, or other documents created responsively; lodging or filing dates; resultant disciplinary actions, sanctions, or penalties, and subjugation dates of resultant disciplinary actions, sanctions, or penalties) concerning job-related or on-the-job violations (ethics, departmental, policy, rule or otherwise), misconduct, inadequate healthcare, healthcare denial, or denial of access to healthcare by Nicole Davis, Megan Miller, Benjamin Loveridge, Deanna Hauri, Jane Gregory, Miranda Vincente MRC B. Joyner, or MRC Donalda Griffin, lodged or filed against said person(s) at any time, during the duration of his/her holding of the profession status of or at any time during his/her employment as, a healthcare services agent and made to or brought to the attention of NCCF or NCCF personnel – whether or not said person(s) was resultantly subjected to penalization (ie. demotion, suspension, termination, reassignment, reprimand, suspension, or revocation of healthcare profession license, permit, registration, or certificate of registration, or otherwise).

62. Not including those included in request numbers 57 and 58, above, each and every investigative file (with corresponding start and completion dates, resultant dispositions or findings, resulting disciplinary actions, sanctions, or penalties, and subjugation dates of resultant disciplinary actions, sanctions or penalties) created resultant of an investigation (administrative, Corizon, GEO, IDOC, NCCF, confidential, secret, internal, external, State commission, board or committee, or otherwise) conducted – concerning job-related or on-the-job violations (ethics, departmental, agency, policy, rule or otherwise), misconduct, inadequate healthcare, healthcare denial or denial of access to healthcare by Benjamin Loveridge, Deanna Hauri, Jane Gregory, Miranda Vincente, Nicole Davis, Megan Miller, MRC B. Joyner or MRC Donalda Griffin – at any time during the duration of his/her holding of the professional status of, or at any times during his/her employment as, a health services agent (under contract to provide healthcare services to prisoners or otherwise).

[Dkt. 126-1 at 10–12.]

Defendants argue that these requests are not proportional to the case and are highly prejudicial for the individuals involved, as the requests include any complaint, even if meritless, against the named individuals. [Dkt. 126 at 13–15.] Defendants further argue that the requests are not limited to the claims of the case, and release of sensitive records could expose Defendants to risks of false claims and abusive tactics from prisoners. [*Id.*] Lastly, they assert that Ms. Miller, MRC B. Joyner and MRC Donalda Griffin are not parties to this case. [*Id.*] In response, Plaintiff argues that the requests are relevant to named witnesses' and Defendants' credibility and willingness to violate "established law or published requirements." [Dkt. 137 at 23–25.]

Plaintiff has stated in his Reply that he has tailored his request to only include instances in which the named individuals were subjected to disciplinary action. [Dkt. 137 at 23.] Thus, the Court finds Defendants' concerns meritless. Additionally, Defendants lack standing as to requests for nonparties, such as MRC B. Joyner and MRC Donalda Griffin. Miller, however, has standing to object to the production of her own disciplinary records. As she is no longer a party, the Court finds that her disciplinary records are not relevant to the case. The Court, however, finds the requests for the other named individuals to be relevant to Plaintiff's claim of deliberate indifference. Accordingly, Defendants' Motion to Quash as to Request Nos. 57, 58, and 62 is **GRANTED** with respect to Miller's records **ONLY**, but **DENIED** as to the other named individuals.

F. *Plaintiff's Motion to Compel (Dkt. 144).*

On December 26, 2018, Plaintiff filed a motion to compel, requesting the Court to compel Mr. Butts to respond to the subpoena. [Dkt. 144.] Thereafter, the Court directed the Clerk to send a copy of the motion to nonparty Mr. Butts and his counsel. [Dkt. 149.] The Court

gave Mr. Butts until February 8, 2019 to respond to the motion. [*Id.*] Mr. Butts failed to timely respond, but on March 29, 2019, filed his response and noted that he simultaneously "submitted a more detailed response to the eighty-one (81) requests included as a part of the Plaintiff's Non-Party Subpoena Duces Tecum." [Dkt. 184 at 2.] Additionally, Mr. Butts "agree[d] to supplement that response as additional documents responsive to the same are located." [*Id.*]

To date, Plaintiff has not responded. Accordingly, Plaintiff's Motion to Compel [Dkt. 144] is **DENIED AS MOOT**. Plaintiff may have leave to refile should he feel that Mr. Butts has failed to respond to the subpoena.

## IV.    Conclusion

For the aforementioned reasons, Defendants' Motion to Quash [Dkt. 126] is **GRANTED IN PART** and **DENIED IN PART**. Furthermore, Plaintiff's Motion to Compel [Dkt. 144] is **DENIED AS MOOT**.

SO ORDERED.

Dated:  23 APR 2019

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

CHRIS KYNER
160111
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Adam Garth Forrest
BOSTON BEVER KLINGE CROSS & CHIDESTER
aforrest@bbkcc.com

Britney Jade McMahan
KATZ  KORIN CUNNINGHAM, P.C.
bmcmahan@kkclegal.com

Joseph G. Strines
AES US SERVICES, LLC
joseph.strines@aes.com